O

# United States District Court
# Central District of California

| | |
|---|---|
| CHLOE VILLANO,<br><br>    Plaintiff,<br><br>  v.<br><br>SHASHAMANE GROUP, LLC et al.,<br><br>    Defendants. | Case № 2:23-cv-04320-ODW (AFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [18]** |

## I. INTRODUCTION

Plaintiff Chloe Villano brings this action against Defendants Shashamane Group, LLC and Rohan Anthony Marley for *quid pro quo* and hostile environment harassment in violation of the California Fair Employment and Housing Act ("FEHA"), and wrongful termination in violation of California public policy. (Compl., ECF No. 1.) Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(2), (b)(3) and (b)(6) or, in the alternative, to transfer venue to the Southern District of Florida. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 18.) For the reasons discussed below,[1] the Court **GRANTS IN**

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

**PART** and **DENIES IN PART** Defendants' Motion.[2]

## II.    BACKGROUND

Marley is the founder and largest shareholder of the Shashamane Group. (Compl. ¶ 6.) Shashamane does business as "Lion Order," a cannabis-centered brand that focuses on the production and sale of custom blends of cannabis products, as well as related accessories and apparel. (*Id.* ¶ 2.) In March 2021, Villano agreed to work for Shashamane in exchange for a promise to receive 10% equity that would vest after two years. (*Id.* ¶ 5.) In June 2021, Villano began serving as Shashamane's Chief Executive Officer ("CEO"). (*Id.* ¶ 6.) In her role as CEO, Villano reported to Marley and Shashamane's other members. (*Id.*)

As CEO, Villano was subjected to verbally abusive and denigrating behavior. (*Id.* ¶ 7.) In front of others, such as members of the Shashamane Group, Marley would tell Villano, "I can speak to you this way because I am fucking you." (*Id.*) As a result of Marley's behavior, Shashamane's other members, such as John Zidziunas, Shashamane's General Counsel and Chief Operating Officer ("COO"), would devalue Villano's work and give credit for her work to the company's male members. (*Id.* ¶ 8.) Shashamane's members "conspired to terminate [Villano] before her equity could vest," but Marley offered to "intervene on [Villano's] behalf and extend his protection if [Villano] promised not to have sex with any other men." (*Id.*) The day after Marley warned Villano that it would "fuck things up" at the company if she was romantically involved with other men—a demand to which she refused to accede—Defendants formally severed Villano's employment. (*Id.*)

Villano has been unemployed since her termination on March 31, 2022, and Shashamane has completely divested her 10% ownership. (*Id.* ¶ 9.) Lion Order is

---

[2] On December 22, 2023, Defendants filed an Ex Parte Application for leave to file written objections and a response to Plaintiff's sur-reply regarding Defendants' Motion. (Ex Parte Appl., ECF No. 37.) First, the outcome of this motion is not materially influenced by Plaintiff's sur-reply. Second, the Court has given both parties ample opportunity to be heard on this issue, and it finds that Defendants will not be irreparably prejudiced without an opportunity to file another response regarding its Motion. Accordingly, Defendants' Ex Parte Application is **DENIED**.

currently selling its cannabis products in Michigan, with plans to spread to other states and expand its product line to include accessories and apparel. (*Id.*)

Villano filed a charge of discrimination and harassment under FEHA with the California Department of Fair Employment and Housing ("DFEH"). On May 22, 2023, DFEH issued Villano a right to sue letter. On June 2, 2023, Villano filed this action against Defendants Shashamane Group and Rohan Marley, alleging *quid pro quo* harassment, hostile environment harassment and wrongful termination. (*See generally* Compl.) Defendants now move to dismiss the Complaint, arguing that (1) the Court lacks personal jurisdiction over Defendants in this action, (2) the Central District of California is not a proper venue for this action, or in the alternative the Court should transfer the case to the Southern District of Florida, and (3) the Complaint fails to state a claim upon which relief can be granted. (Mot.)

### III.   PERSONAL JURISDICTION

Defendants first argue that the Court should dismiss this action for lack of personal jurisdiction under Rule 12(b)(2). (Mot. 11–17.)

**A.   Legal Standard**

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due-process requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shinvath Rai Hanarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). A non-resident defendant may be subject to either general or specific personal jurisdiction. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

When a party seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "[U]ncontroverted allegations in the complaint must be taken as true," and any conflicts between the facts in the parties' affidavits are resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800. However, "bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal quotation marks omitted). Random, fortuitous, or attenuated contacts will not be sufficient to establish specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

**B.    Discussion**

A non-resident defendant may be subject to either general or specific personal jurisdiction. *Fed. Deposit Ins. Corp.*, 828 F.2d at 1442.

1.  *General Jurisdiction*

A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).

At all relevant times, Marley has been, and currently still is, a resident of Florida. (*See* Decl. Rohan Marley ISO Mot. ("Marley Decl.") ¶ 4, ECF No. 18-3.) Other than a period of six years in which Marley resided in New York, he has continuously lived in Florida, and it is the forum in which he intends to maintain his permanent home for the foreseeable future. (*Id.*) Shashamane, a limited liability

company, is subject to general jurisdiction where it was formed and where it maintains its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Shashamane has at all times been organized under the laws of Delaware, and the members of the company's Management Board is concentrated in Florida, with none residing in California at the time that Villano filed her Complaint. (*See* Decl. John Zidziunas ISO Mot. ("Zidziunas Decl.") ¶¶ 5–10, ECF No. 18-1.) In this case, Villano has not sufficiently established that either Defendant is "essentially at home" in this forum and subject to the general jurisdiction of this Court.

    2. *Specific Jurisdiction*

Without general jurisdiction, the Court must determine whether Defendants' contacts with California are sufficient to render the exercise of specific jurisdiction reasonable. To do so, the Ninth Circuit applies a three-prong test: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum-state, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test, upon which the burden shifts to the party contesting jurisdiction to "present a compelling case" that the third prong—reasonableness—has not been satisfied. *Id.*

    a. Purposeful Direction

For claims sounding in tort, which include harassment and wrongful termination, the court applies a "purposeful direction test" and looks to "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802–03); *see also Mercado v. JMJ Assocs. LLC*, No. SACV 14-2060-JLS (RNBx), 2015 WL 13783452, at *4 (C.D Cal., Apr. 15, 2015)

(holding that the "purposeful direction" test applies to plaintiff's discrimination and wrongful termination claims, which sound in tort).

Defendants argue specific jurisdiction is lacking because the alleged wrongful acts originated outside of California. Under certain circumstances, however, wrongful conduct committed outside the forum state can give rise to personal jurisdiction in the state where the harmful effects of such conduct were felt. Under the Ninth Circuit's "effects test," derived from *Calder v. Jones*, 465 U.S. 783 (1984), a defendant satisfies the purposeful direction prong of personal jurisdiction if he (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Here, Villano has clearly alleged that Marley and Shashamane committed intentional acts with the knowledge that Villano would experience harmful effects in California, thus satisfying the first and third prongs of the "effects test." Therefore, the outcome of this part of the analysis hinges on whether Defendants expressly aimed their conduct at the forum state. The analysis of this prong "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Thus, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290. As an example of the "effects test," in *Calder*, a California resident accused two non-resident defendants—a reporter and an editor of a nationally circulated tabloid newspaper—of libel. 465 U.S. at 785–87. Although the defendants argued that their alleged wrong had no intended nexus with California and that they should be treated like "a welder employed in Florida who works on a boiler which subsequently explodes in California," the Supreme Court rejected this analogy and pointed out that "petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789.

Applying the Supreme Court's reasoning in *Calder*, the Court similarly finds that Defendants expressly aimed their conduct at California. During her employment, Villano worked remote, as did all of Shashamane's members. (Decl. Chloe Villano ISO Opp'n ("Villano Decl.") ¶ 3, ECF No. 23-1.) Although she initially resided in Colorado, Villano began living and working in Los Angeles approximately 50% of the time as her employment continued. (*Id.* ¶¶ 5–6.) By January 2022, Villano resided full-time in California. (*Id.* ¶ 6.) Villano declares that she relocated because, in her capacity as Shashamane's CEO, the company's members encouraged Villano to develop the California arm of the business. Nico Marley, Rohan Marley's son and member of the Shashamane Group, told Villano to "start w[ith] California" and "get California in motion." (Villano Decl. ¶ 13, Ex. A–B.) Erik Caggiano, Shashamane's Chief Business Officer, provided Villano with a list of California cannabis businesses to contact about making deals. (*Id.* ¶ 13, Ex. B.) Furthermore, in a text message on January 30, 2022, Caggiano acknowledged that Villano moved to California, writing, "Hey how's California treating you? Great that you officially made the move to a warmer climate." (Decl. Chloe Villano ISO Sur-Reply ("Suppl. Villano Decl.") Ex. B, ECF No. 35-3.)

Although it is disputed whether Villano moved to California at Defendants' direction, (*compare* Villano Decl. ¶¶ 6–8, 11 (declaring that Marley encouraged Villano to relocate to California to carry out her duties as Shashamane's CEO and secure deals with California companies), *with* Decl. John J. Zidziunas ISO Reply ("Suppl. Zidziunas Decl.") ¶¶ 7–8, ECF No. 14-2 (stating that "[a]t all times, the Management Board understood Ms. Villano to live in, and work from, her home in Colorado"), the Court must decide all factual disputes in Villano's favor, *see Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Therefore, at this stage of litigation, the Court understands that Villano moved to California, at least in part, to carry out her duties as Shashamane's CEO.

Villano further declares that she was physically located in California when she endured the conduct underlying her Complaint. (Villano Decl. ¶ 19.) For example, Villano was in the Los Angeles area during "many of the calls where Defendant Marley sexually harassed [her]," as well as when Marley proposed she have a baby with him and demanded that she not date or have sex with other men (or else face the risk of termination). (*Id.* ¶ 18.) Villano was also residing in California—as members of Shashamane's Management Group were aware—when they made the decision to terminate her. (*Id.* ¶¶ 17, 19.)

Plaintiff argues that this conduct is a sufficient basis to render specific jurisdiction reasonable. (Opp'n 11, ECF No. 23.) In response, Defendants argue that non-binding precedent "foreclose[s]" Villano's theory of jurisdiction. (Reply 10, ECF No. 24 (citing *Grootonk v. Labrie Env't Grp, LLC*, No. 8:22-cv-01868-FWS (ADSx), 2023 WL 5420299 (C.D. Cal. July 20, 2023).) In *Grootonk*, a foreign company terminated a CEO who unilaterally decided to live and work part-time in California. *Grootonk*, 2023 WL 5420299, at *1–2. The plaintiff alleged that the Court had jurisdiction over defendants solely based on her presence and part-time residence in California at the time of termination. See *id.* at *7–8. The court found jurisdiction lacking because the suit-related conduct was "entirely personal to [Plaintiff] and would follow [her] wherever she might choose to live or travel," including her residences in other states. *Id.* at *8 (alterations in original) (quoting *Picot*, 780 F.3d at 1215). In *Grootonk*, the plaintiff "argue[d] only that [d]efendants purposefully directed their action towards California by firing [p]laintiff while she resided in the state." *Id.* at *7. That is not true here. In this case, California is not merely the state where Villano unilaterally chose to reside at the time of her termination, but it is the market where Shashamane was affirmatively looking to expand its business by directing Villano to explore market opportunities. In fact, the only in-person meeting involving the majority of Shashamane's members took place in Los Angeles in May 2021. (Villano Decl. ¶ 4.) Furthermore, in addition to Shashamane's business

connections to the state, California was the forum where Marley and Shashamane's other members knew Villano resided when they subjected her to the alleged harassment and wrongful termination.

At this stage, "the plaintiff need only make a prima facie showing of jurisdictional facts," *Sher*, 911 F.2d at 1361, and, in contrast to *Grootonk*, Villano's factual allegations are sufficient to conclude that Defendants expressly aimed their conduct at California and purposefully availed themselves of the privilege of conducting activities in the State. *Picot*, 780 F.3d at 1214; *see also Mercado*, 2015 WL 13783452, at *4 ("The acts of hiring, employing, discriminating against, and terminating [the defendant] were . . . clearly expressly aimed at California."); *Alexis v. Rogers*, No. 15cv691-CAB-BLM, 2016 WL 11707630 (S.D. Cal. Feb. 26, 2016) (holding that defendants expressly aimed their conduct at California, in part, by (1) employing a person in the state, (2) harassing the plaintiff by e-mail, text, phone and Skype numerous times over the period of 18 months, and (3) terminating and emailing plaintiff's termination notice to her in California). Therefore, the Court finds that Defendants expressly aimed their conduct at California.

b.  Arising Out of Forum-Related Activities

Next, Villano's claims must "arise out of or result from" Defendants' California-related activities. *Schwarzenegger*, 374 F.3d at 802. A plaintiff's claims are related to defendant's forum-related activities "if, but for a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (internal quotation marks omitted) (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)); *see Ballard*, 65 F.3d at 1500 ("The question, therefore, is this: but for [Defendant's] contacts with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"). As discussed previously, Defendant's forum-related activities included employing Plaintiff with full knowledge, and even encouragement, of her relocation to California,

targeting California as a potential market for business growth, and subsequently directing their harassment and termination at Villano in California. As a result, the but-for test is clearly satisfied because had Defendants not done so, Villano would not have a claim for injuries that resulted from Defendants' alleged wrongs.

### c. Reasonableness

Finally, a court's personal jurisdiction over a case must not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. After the plaintiff establishes the first two prongs of the Ninth Circuit's test for specific personal jurisdiction, the burden shifts to the defendant to present a compelling case that it would be unreasonable to require the defendant to defend himself in the forum state. *Schwarzenegger*, 374 F.3d at 802; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("[Defendant] must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." (quoting *Burger King*, 471 U.S. at 476–78)). Defendants make no specific argument why the exercise of jurisdiction would be unreasonable, nor do they discuss any of the seven factors that are applied to weigh reasonableness. *See Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). As discussed further below, although defendants may be inconvenienced by litigating this action in California, "they cannot show that this burden rises to the level of a constitutional concern." *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 962 (C.D. Cal. 2005) (internal quotation marks and citations omitted).

The Court finds that Defendants have not presented a "compelling case" that the exercise of personal jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 476–78. Because Villano has satisfied all three prongs of the test for exercising personal jurisdiction in California, Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

# IV. VENUE

Defendants next argue that the Court should dismiss this action for improper venue under Rule 12(b)(3), or, in the alternative, transfer the case to the Southern District of Florida. (Mot. 17–24.)

## A. Legal Standard

Venue in federal court is governed by statute. *See Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55–57 (2013). If a case has been filed in the wrong judicial district or division, the court must "dismiss [the complaint], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If venue is improper and the defendant makes a timely objection, transfer or dismissal is mandatory. *See id.*; *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1102 (C.D. Cal. 2001) ("Where venue is *improper*, a court must dismiss or transfer under 28 U.S.C. § 1406.").

The plaintiff bears the burden of demonstrating the propriety of venue in the chosen judicial district. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). All well-pleaded allegations in the complaint are accepted as true, unless they are contradicted by the defendant's evidence. *Mainstay Bus. Sols. v. Indus. Staffing Servs., Inc.*, No. CIV S-10-3344 KJM GGH, 2012 WL 44643, at *2 (E.D. Cal. Jan. 9, 2012). A court may examine facts outside the complaint to determine whether venue is proper. *Murphy*, 362 F.3d at 1137. However, a court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.* at 1138.

## B. Discussion

1. *Motion to Dismiss for Improper Venue*

As a preliminary matter, although the Court ultimately finds that venue in this district is authorized by federal statute, Villano first alleges in her Complaint that venue is proper "pursuant to California Government Code section 12965(c)(2)."

(Compl. ¶ 29.) Further, in briefing, Villano argues that FEHA's "venue provision provides that California courts have jurisdiction of actions brought pursuant to FEHA where the alleged unlawful practice is alleged to have been committed in the State." (*See* Opp'n 12 (citing Cal. Gov't Code § 12965).) However, Villano's reliance on California law to establish venue in this federal district is improper. *See Atlantic Marine*, 571 U.S. at 55 (holding that federal venue provisions "alone define whether venue exists in a given forum"). Although the California Government Code may render venue proper in California courts, the same is not true in this Court. Next, in support of her argument that venue is proper in this district, Villano cites a litany of cases that support the contention that FEHA claims may be pursued in non-California courts against out-of-state defendants. (Opp'n 11–13.) However, in doing so, Villano conflates the concepts of venue and the extraterritorial applicability of California law.

Rather, where federal jurisdiction is founded on diversity of citizenship, venue is proper where:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, venue is authorized by Section 1391(b)(2). "Circuit courts are split on whether the statutory reference to 'events or omissions giving rise to the claim' requires courts to focus solely on defendant's activities, or to consider plaintiff's activities as well." *Volks USA Inc. v. A2 Hosting, Inc.*, No. 16-cv-4277-CAS (Ex), 2016 WL 6808113, at *3 (C.D. Cal. Nov. 16, 2016) (internal citations omitted). "Relevant here, the Ninth Circuit has adopted the view that 'the locus of injury' is a

relevant factor in determining where a substantial part of the events or omissions occurred." *Id.* (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001)). Although Defendants cite numerous cases supporting their argument that the venue analysis should focus on the defendant's conduct rather than the location of plaintiff's injury, (Mot. 20–21), none of these cases apply the Ninth Circuit's standard that the "locus of injury" is sufficient to constitute a "substantial part of the events or omissions" for the purposes of Section 1391(b)(2). Here, Plaintiff alleges, and Defendants fail to refute, that Villano was physically present in this district when she suffered injury from Defendants' alleged harassment, retaliation, and wrongful termination. The Court finds that, insofar as Villano was residing in California and was harmed within the Central District of California, a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is proper.

2. *Motion to Transfer*

When venue is proper, Section 1404 gives the Court discretion, "in the interest of justice," to transfer an action to "any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The moving party must establish that "a transfer will allow a case to proceed more conveniently and better serve the interests of justice." *See Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009). The moving party must first show that the action "might have been brought" in the proposed the transferee district based on subject matter jurisdiction, personal jurisdiction, and venue rules. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). If that showing is made, the district court must conduct "individualized, case-by-case consideration of convenience and fairness" regarding to the parties, the witnesses, and other practical considerations. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

Relevant factors to consider in determining whether to transfer a case pursuant to Section 1404(a) include: (1) the plaintiff's choice of forum; (2) the extent to which

there is a connection between the plaintiff's causes of action and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses, (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *Id.* at 499 ("the Jones Factors"). "Substantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors set forth above weigh heavily in favor of venue elsewhere." *Catch Curve, Inc. v. Venali, Inc.*, No. 05-cv-04820-DDP (AJWx), 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006).

It is true that Villano *could* have brought this action in another district, namely the Southern District of Florida. This is the district where both Defendants are domiciled, (Mot. 22–23), and it is where a majority of Shashamane's Management Board currently resides, (Zidziunas Decl. ¶¶ 6–8). However, although Defendants accuse Villano of "bad-faith forum shopping," (Mot. 23), the Central District of California is where Villano was residing when she was subjected to the alleged harassment and wrongful termination identified in Villano's Complaint. Even though three of the four members of Shashamane's Management Board reside in Florida, it is not unreasonable to conclude that it was foreseeable that they may be subjected to suit in this district after targeting it as a business opportunity, allowing (and potentially encouraging) their CEO to reside here, and targeting the alleged harassment and termination at a person who resided here. Despite being potentially inconvenienced by litigating this action in this district, Defendants fail to establish why the interests of justice require the Court to transfer the case. Accordingly, the Court **DENIES** Defendants' request to transfer venue to the Southern District of Florida.

## V. FAILURE TO STATE A CLAIM

Finally, Defendants argue that the Court should dismiss this action under Rule 12(b)(6) because (1) Villano is not, and never was, covered by FEHA, and (2) Villano's wrongful termination claim, based in California common law, is not applicable.

### A. Legal Standard

A court may also dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Discussion

a. *Villano's FEHA Claims*

Looking first to Villano's claims under FEHA, Defendants argue that Villano fails to establish that either (1) she was employed in California, or (2) the allegedly

tortious conduct took place in California. (Mot. 25 (citing *Paparella v. Plume Design, Inc.*, No. 22-cv-01295-WHO, 2022 WL 2915706, at *4 (N.D. Cal. July 25, 2022)).) "[T]he majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the situs of both employment and the material elements of the cause of action, as opposed to residence of the employee or the employer," *Russo v. APL Marine Services, Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015) (emphasis omitted).

As discussed previously, Villano alleges that she "was working for Defendants in Los Angeles County when she suffered the sexual harassment . . . that forms the basis of her claims." (Compl. ¶ 29.) Further, Villano was residing in California during the relevant period—as she declares at the behest of her employer with the purpose of targeting California businesses for Shashamane-related growth opportunities—when Defendants subjected her to a continued hostile environment and *quid pro quo* harassment. Specifically, Villano was in the Los Angeles area when "Marley offered to intercede on her behalf and arrange for her to at least retain her full 10% equity stake in Shashamane, so long as she would not have sex with any other men." (Compl. ¶ 38.) Villano also alleges to have been located in California when she was subjected to Defendants' ongoing hostile work environment. Considering Villano's allegations that (1) she was located in California due to her employment with Shashamane, and (2) the situs of the material elements of Villano's first and second cause of action brought under FEHA is in California, the Court finds that Villano sufficiently alleges the two FEHA claims in her Complaint.

    b. *Villano's Wrongful Termination Claims*

However, the Court's focus changes when evaluating the applicability of Villano's claim for wrongful termination under California common law. Here, for wrongful termination claims, "California courts have emphasized the location of where the termination decision was made as a crucial element of the claim because this decision gives rise to the liability of the conduct." *Sexton v. Spirit Airlines, Inc.*,

No. 2:21-cv-00898-TLN-AC, 2023 WL 1823487, at *4 (E.D. Cal. Feb. 8, 2023). Similarly, a court in this district found that "the approach of considering where the decision to terminate the employee took place, rather than the location of the employee at the time he or she learned of the decision, aligns with the California Supreme Court's emphasis on the location of the violative conduct." *English v. General Dynamics Mission Systems, Inc.*, No. 5:18-cv-00908-JGB (SHKx), 2019 WL 2619658, at *7 (C.D. Cal. May 8, 2019) (citations omitted). While neither *Sexton* nor *English* are binding authority, the Court finds their rationale persuasive. Here, Defendant has provided undisputed evidence that each disinterested voting member of Shashamane's Management Board was located outside of California when making the decision to terminate Villano. (Zidziunas Decl. ¶¶ 6, 30.) Having failed to allege that the decision to terminate Villano was made in California, the Court **GRANTS** Defendants' motion to dismiss Villano's claim for wrongful termination under California common law.

## VI.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' motion to dismiss this action under Rule 12(b)(2) and 12(b)(3).  The Court also **DENIES** Defendants' request to transfer this case to the Southern District of Florida.  Finally, although the Court **DENIES** Defendants' motion to dismiss Villano's claims for *quid pro quo* harassment and hostile environment harassment in violation of FEHA under Rule 12(b)(6), the Court **GRANTS** the motion as to Villano's wrongful termination claim.  Accordingly, Villano's claim for wrongful termination in violation of California public policy is hereby **DISMISSED**.

**IT IS SO ORDERED.**

January 3, 2024

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE